IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

vs.                                           Nos.   CR 05-1160 MV
                                                      CIV 16-0676 MV/LF

MICHAEL DALLAS,

      Defendant/Movant.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Michael Dallas's Expedited Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 66.[1] The Honorable Martha Vázquez referred this case to me to recommend to the Court an ultimate disposition of the case. No. CIV 16-0676 MV/LF, Doc. 5. Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Dallas's motion.

### I.     Background Facts and Procedural Posture

On June 13, 2006, Dallas pled guilty to a one-count superseding indictment. *See* Docs. 27, 42, 43. The superseding indictment charged Dallas with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The probation officer who prepared Dallas's presentence report ("PSR") determined that Dallas's base offense level was 24 under USSG[2] § 2K2.1(a)(2) because Dallas committed the offense after having sustained at least two prior felonies that were crimes of violence. PSR ¶ 14. Dallas received a

---

[1] Citations to "Doc." are to the document number in the criminal case, case number CR 05-1160 MV, unless otherwise noted.

[2] Dallas was sentenced using the 2005 version of the Sentencing Guidelines. *See* PSR ¶ 13. All references to the Guidelines are to the 2005 version unless otherwise noted.

two-level enhancement pursuant to USSG § 3C1.2 for reckless endangerment during flight because he fled from law enforcement officers and resisted being placed in handcuffs during his arrest. PSR ¶ 18. However, because Dallas had three prior violent felony convictions, the probation officer determined that Dallas was subject to an enhanced sentence as an armed career criminal under USSG § 4B1.4 and 18 U.S.C. § 924(e). PSR ¶ 20. Consequently, Dallas's offense level became 33. *Id.* He received a three-level reduction for acceptance of responsibility under USSG § 3E1.1. PSR ¶ 21. His total offense level was 30, and his history category was VI, which resulted in an advisory guideline sentencing range of 168 to 210 months in prison. PSR ¶¶ 22, 35, 74. But because Dallas was considered an armed career criminal under 18 U.S.C. § 924(e)(1), he was subject to a mandatory minimum sentence of 180 months in prison, and his guideline imprisonment range therefore was 180 to 210 months. PSR ¶ 74.

Neither party objected to the PSR. *See* Docs. 45, 46. On September 27, 2006, the Court sentenced Dallas to the minimum mandatory sentence of 180 months in prison and entered its judgment the same day. *See* Doc. 47 at 1. In October 2008, Dallas filed a Motion to Vacate under 28 U.S.C. § 2255, which the Court dismissed as untimely. *See* Docs. 52, 59, 60. On June 6, 2016, the Tenth Circuit authorized Dallas to file a second or successive 28 U.S.C. § 2255 motion to raise a claim under the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. 64. On June 24, 2016, Dallas timely filed an Expedited Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 (and *Johnson v. United States*). Doc. 66. The government filed its response on August 29, 2016, Doc. 71, and Dallas filed his reply on December 14, 2016, Doc. 78.

## II. Dallas's Claims and the Government's Response

Dallas raises a single issue in his motion. He argues that because the Supreme Court held in *Johnson* that the Armed Career Criminal Act's (ACCA's) "residual clause" is unconstitutionally vague, his three prior felony aggravated battery convictions under New Mexico law no longer qualify as violent felonies. Doc. 66 at 2–7. This argument necessarily depends on a determination that the only way that his prior aggravated battery convictions qualified as violent felonies was because they fell within ACCA's residual clause, and that they did not qualify under the "elements clause." In response, the government argues that Dallas has not met his burden of establishing that the Court relied on the residual clause in sentencing him, and that the Court should deny his motion on that basis. Doc. 71 at 3–5. The government further argues that if the Court reaches the merits of Dallas's claim, Dallas's three prior aggravated battery convictions qualify as violent felonies under ACCA's "elements clause." *Id.* at 5–14.

## III. Discussion

As an initial matter, neither the PSR nor the sentencing Court specified whether it was relying on the residual clause in concluding that Dallas was subject to ACCA. *See generally* PSR; Doc. 57. Thus, the only way that Dallas can establish that the sentencing Court relied on the residual clause is to establish that his prior aggravated battery convictions do not qualify as violent felonies under ACCA in any other way. The Court consequently will address the merits of Dallas's motion.

### A. The Categorical and Modified Categorical Approach to Determining Whether a Crime is a Violent Felony under ACCA

ACCA provides, in pertinent part, that "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen

3

years . . . ." 18 U.S.C. § 924(e)(1). "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "elements clause"]; or (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"] . . . ." 18 U.S.C. § 924(e)(2)(B). In *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015), the Supreme Court struck down the residual clause as unconstitutionally vague, but it left intact the elements clause and the enumerated clause. The following year the Court held that *Johnson* announced a substantive rule that applied retroactively on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Thus, the issue properly before the Court in this case is whether Dallas's prior convictions still qualify as violent felonies under ACCA.

The parties agree that Dallas has three prior felony convictions for aggravated battery under N.M. STAT. ANN. §§ 30-3-5(A) and (C). *See* Doc. 66 at 1–2; Doc. 71 at 2, 9–10 & Exhs. 1–5. They also agree that these convictions do not fall within ACCA's enumerated clause. *See* Doc. 66 at 3; Doc. 71 at 5. Thus, to qualify as an armed career criminal, Dallas's three prior aggravated battery convictions must satisfy the elements clause, that is, the crime of aggravated battery under N.M. STAT. ANN. §§ 30-3-5(A) and (C) must have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

The Court must apply the "categorical approach" to determine whether a prior conviction falls within ACCA's elements clause. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). This means that the Court must look only to the elements of the statute under which the defendant was convicted, not at the facts underlying the prior conviction. *See Mathis v. United*

4

*States*, 136 S. Ct. 2243, 2253 (2016); *Descamps*, 133 S. Ct. at 2283. If the "least of the acts criminalized" by the statute does not have as an element the actual, attempted, or threatened use of violent force or a substantial degree of force against another person, then the defendant's conviction under that statute is not a violent felony within the meaning of the elements clause. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quotation omitted and alteration adopted). Thus, when applying the categorical approach, the Court must identify the least culpable conduct prohibited by the statute of conviction and presume that the defendant's conviction rested on nothing more than this conduct. *Id.* To identify the least culpable conduct, the Court looks to how state courts interpret the statute. *See United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017) ("state law defines the substantive elements of the crime of conviction"). As part of this step, the Court must analyze "the version of state law that the defendant was actually convicted of violating." *McNeill v. United States*, 563 U.S. 816, 821 (2011).

The Supreme Court held in an earlier *Johnson* case—*Johnson v. United States*, 559 U.S. 133, 140 (2010)[3]—that the term "physical force" as used in the elements clause of ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person." (Emphasis in original.) Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id*. at 1272. Therefore, in evaluating whether Dallas's prior aggravated battery convictions under New Mexico law constitute violent felonies under ACCA, the Court first must consider whether the state statute that he violated necessarily proscribes conduct that "has as an element the use, attempted use, or threatened use of" violent

---

[3] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of ACCA (hereinafter referred to as *Johnson II*).

force against the person of another. If so, it is categorically a "violent felony" under the elements clause of ACCA.

If, however, the statutory definition of aggravated battery under New Mexico law is broader than ACCA's definition of "violent felony," and if the statute is "divisible," the Court then will apply what is known as a "modified-categorical approach." *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010); *see also Mathis*, 136 S. Ct. at 2249, 2256. Under this approach, the Court should consult "charging documents and documents of conviction to determine whether the defendant in a particular case was convicted of an offense that qualifies as a violent felony." *Id.*

B. Dallas's Three Prior Convictions for Aggravated Battery are Violent Felonies under ACCA.

New Mexico's aggravated battery statute provides:

A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. STAT. ANN. § 30-3-5.

The minimum culpable conduct under this statute requires the unlawful touching of another with the intent to injure that person. N.M.S.A. § 30-3-5(A). One could conclude that the unlawful touching of a person with the intent to injure that person qualifies under *Johnson I* as the threatened use of "force capable of causing physical pain or injury to another person." 559 U.S. at 140; *see State v. Vallejos*, 2000-NMCA-075, ¶ 18, 129 N.M. 424, 430, 9 P.3d 668, 674 ("The aggravated battery statute is directed at preserving the integrity of a person's body against

6

serious injury."). However, because Dallas was convicted of the more serious felony version of aggravated battery under subsection C, the Court need not decide that question.

Because the statute differentiates between misdemeanor offenses in subsection B and third degree felonies in subsection C, it is divisible. *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). Dallas was convicted of aggravated battery in violation of N.M. STAT. ANN. § 30-3-5(C). *See* Doc. 71-2 (plea agreement listing offenses to which Dallas pled guilty). Section 30-3-5(C) requires proof of one of the following: (i) that the battery caused great bodily harm; (ii) that the battery was accomplished with the use of a deadly weapon; or (iii) that the battery was accomplished in a manner whereby great bodily harm could be inflicted. N.M. STAT. ANN. § 30-3-5(C); *see also* N.M. R. ANN., CRIM. UJI 14-322, 14-323 (essential elements instructions for felony versions of aggravated battery). Although state court documents specify that Dallas's aggravated battery convictions involved either great bodily harm or the use of a deadly weapon, or both, *see* Docs. 71-1 to 71-5, it is unclear whether subsection C is itself divisible under *Mathis*, or whether the three options listed in § 30-3-5(C) are merely alternative means of committing third degree aggravated battery.[4] The Court need not decide that question because no matter how committed, a third degree aggravated battery in violation of N.M. STAT. ANN. § 30-3-5(C) qualifies as a violent felony under *Johnson I*.

First, an unlawful touching of a person with the intent to injure that person, and that either causes great bodily harm to the person or is otherwise accomplished in a manner whereby great bodily harm could be inflicted, is a violent felony. State law defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious

---

[4] Indeed, the government takes the position that the subsection C is not divisible under *Mathis*. Doc. 71 at 11.

7

disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." N.M. STAT. ANN. § 30-1-12(A). Because the battery caused great bodily harm or was done in a manner whereby great bodily harm could be inflicted, the battery necessarily involved "force capable of causing physical pain or injury to another person" as required by *Johnson I*. 559 U.S. at 140.

Aggravated battery with a deadly weapon also qualifies as a violent felony under ACCA. The Tenth Circuit's decision in *United States v. Maldonado‑Palma*, 839 F.3d 1244 (10th Cir. 2016) is determinative on this point. In *Maldonado‑Palma*, the court considered whether a New Mexico conviction for aggravated assault with a deadly weapon categorically constituted a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[5] *Id*. at 1246–50. The sentencing guidelines definition of "crime of violence" is identical to the relevant ACCA provision and also is interpreted pursuant to the modified categorical approach outlined above. *See United States v. Ventura‑Perez*, 666 F.3d 670, 673 (10th Cir. 2012). In *Maldonado‑Palma*, the court first confirmed that, under New Mexico law, aggravated assault with a deadly weapon requires use of the deadly weapon—mere possession does not suffice to satisfy the elements. 839 F.3d at 1249–50. After reviewing the New Mexico definition of "deadly weapon," the court concluded that employing such a weapon "necessarily threatens the use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'" *Id*. at 1250 (quoting J*ohnson I*, 559 U.S. at 140); *see also Ramon Silva*, 608 F.3d. at 669–71.

---

[5] The guideline amendments made effective November 1, 2016 eliminated the relevant text of this portion of the guidelines, which previously instructed the sentencing court to increase a defendant's base offense level if "the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence . . . ." *See* Amendment 802, USSG App. C, Supp. (Nov. 1, 2016). The amendment does not affect this analysis.

As with aggravated assault with a deadly weapon, aggravated battery with a deadly weapon under New Mexico law requires proof of the *use* of a deadly weapon, not mere possession. *See* N.M. STAT. ANN. § 30-3-5(C); *see also* N.M. R. ANN., CRIM. UJI 14-322 (instructing that aggravated battery with a deadly weapon requires proof that the defendant "touched or applied force to" the victim with a deadly weapon and that "[t]he defendant *used*" a deadly weapon (emphasis added)). The logic in *Maldonado-Palma* therefore compels the conclusion that a New Mexico conviction for aggravated battery with a deadly weapon categorically qualifies as a violent felony under ACCA.[6] The fact that the Supreme Court itself in *Johnson I* cited with approval Black's definition of "violent felony" as "a crime characterized by extreme physical force, such as . . . *assault and battery with a dangerous weapon*" in parsing the meaning of the ACCA's force clause further supports this conclusion. 559 U.S. at 140–41 (emphasis added).

Thus, all three of the means by which one can violate N.M. STAT. ANN. § 30-3-5(C) satisfy the force requirement set out in *Johnson I*. As such, Dallas's three prior convictions under N.M. STAT. ANN. § 30-3-5(C) categorically constitute violent felonies under the ACCA.

Dallas argues that the Tenth Circuit's decision in *United States v. Barraza-Ramos*, 550 F.3d 1246 (10th Cir. 2008) compels a different result. Doc. 66 at 6–7. In that case, the court evaluated whether a Florida aggravated battery statute that prohibited "actually and intentionally touching a pregnant woman against her will, actually and intentionally striking a pregnant woman against her will, or intentionally causing a pregnant woman bodily harm" constituted a crime of violence under the guidelines. *Id.* at 1249. Because the least culpable conduct in that statute involved merely "touching" a pregnant woman against her will, it did not necessarily

---

[6] In fact, given that *Maldonado-Palma* involved only an assault, and Dallas's conviction involved a completed battery, the logic applies with even greater force here.

9

involve the use of "physical force." *See id.* at 1251. As the government points out, *see* Doc. 71 at 13–14, the statute at issue here is quite different. It requires the unlawful touching of another person with the intent to injure that person, *and* that the touching either causes great bodily harm; (ii) is accomplished with the use of a deadly weapon; or (iii) is accomplished in a manner whereby great bodily harm could be inflicted. Thus, the unlawful touching required under New Mexico's aggravated battery statute necessarily involves the use of violent, physical force.

Dallas also argues that New Mexico's aggravated battery statute is not divisible, and that the Court may not look beyond § 30-3-5(A) to determine the elements of the crime. Doc. 78 at 9–11. This argument simply cannot be squared with the Supreme Court's statement in *Mathis* that "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." 136 S. Ct. at 2256. Because subsection 30-3-5(B) defines a misdemeanor violation of the aggravated battery statute, and subsection 30-3-5(C) defines the third degree felony violation of the statute, those "alternatives carry different punishments" and "they must be elements." *Mathis*, 136 S. Ct. at 2256. Therefore, the modified categorical approach is applicable, and the Court must evaluate the least culpable conduct that would satisfy subsections A and C, together. Under the modified categorical approach, Dallas's three prior convictions for aggravated battery under N.M. Stat. Ann. §§ 30-3-5(A) and (C) are violent felonies under ACCA.

## IV. Recommendation

I recommend that the Court DENY Dallas's motion. All of Dallas's three prior aggravated battery convictions under New Mexico law are violent felonies under ACCA. He therefore is subject to ACCA's fifteen-year mandatory minimum sentence, which is the sentence he received.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge